Our third case in the morning is 4090725 Zalazowski v. Round Grove Township for the appellant, Mr. Amatori. Is that the right pronunciation? Yes, your honor. Amator. Amator. Okay. And Mr. Lundquist and Mr. Bersani. You may proceed. Thank you, your honor. Good morning, your honors. My name is Roy Amator. I represent the court this morning with my co-counsel, trial counsel, Mr. Thomas A. Purdick. Your honor, I believe that the trial court fundamentally misconstrued the Tort Immunity Act and I believe my opponents had as well and I believe it resulted in the dismissal of this case in the trial court. First of all, your honor, I'd like to address the fact that the trial court found that the plaintiff's allegations, that the defendants were immune based on the plaintiff's allegations under sections 3-102 and 3-103 of the Tort Immunity Act. I think this showed that the trial court misconstrues the act. First of all, section 3-102 provides no immunities so it could not immunize in any way the defendant from the plaintiff's allegations. Section 3-102 restates it may not create out of whole cloth but it does restate the long-standing common law, a rule that a local governmental entity has a duty to maintain its property in a reasonably safe condition. So there's no immunity there. There does need to be knowledge, constructive or actual knowledge, but that's not an immunity, that's just a condition for liability to attach. Section 3-103 which the trial court also found immunized the defendants from the plaintiff's allegations does provide immunity for the planning and design of a public improvement project. Section 3-103 deals with public improvement projects and it's the most applicable and specific of the tort immunity provisions in the act and that's the one that governs this case. But what does section 3-103 say? It says, well, you do enjoy, local public entities do enjoy immunity from the planning and design and approval of a public project. But it very clearly states, and this was ignored by the trial court unfortunately, it very clearly states that if you, once you've done your planning and your design, if you actually carry out if you engage in construction of the project and as a result of that construction you create a dangerous condition, then you are liable. That's exactly what section 3-103 says and we rely on it heavily in this case. Because in this case, Your Honor, the defendants did actually carry out a plan of public improvement. We allege that they did it in a negligent manner. You did say that the unimproved road in itself was not unreasonably dangerous. Yes, we feel that has no consequence really at all. I mean, the defendant could have erected a brick wall on the road and done an excellent, fine job of doing so. But it's the placement of the brick wall on a roadway that would create the negligence. Not that they didn't mortar correctly or they did something, but it's the placement. And that's why I cite Jorgensen v. Whiteside. This was a case dealing with a construction project at O'Hare Airport. And what happened is they had a temporary terminal and a temporary bus loading zone for passengers, which on one side was exposed to through traffic and the plaintiff got ran over. And they said that true, the city had no duty to make this improvement, but they did make the improvement. And when they made it, they located the bus loading zone, which itself was perfectly fine, but it was the location of the loading zone in such a way as to create a danger for people lawfully on the premises. So it's not correct to say that the defendants only improved the east side of the road? It is correct to say that they only improved the east side of the road, Your Honor. But there's nothing in logic or common sense or any or many of the cases cited that would suggest that that somehow gets them off the hook for a dangerous condition. Before the construction, no dangerous condition. After the construction, dangerous condition. This accident occurred on the gravel part? I'm sorry, Your Honor. This accident occurred on the gravel part, is that correct? Yes, immediately after the transition from paved to loose gravel. And Your Honor, we have a case where a person was injured in just such a fashion, went to hell, and the court reasoned that it was a person on a moped in Herman v. Will. The person on the moped, the court reasoned, couldn't tell. It recounted that he could see a change of color of some kind, but by the time he was able to tell that the road was changing from one surface condition to a different surface condition, it was too late. And he hit the loose gravel, and he went off the road and got hurt very badly and liability was upheld in that case. Now, my learned brother attempts to distinguish that case because in that case, the local governmental entity actually laid down the gravel. Okay? Or in our case, they laid down the smooth blacktop. But it's the transition from blacktop to gravel which was unsafe. And as I state in my reply brief, we've all seen signs warning of sudden change in surface conditions. At least I have, and I asked the court to take judicial notice that these signs are quite present. Now, this is not to say that they had a duty to post a sign warning of it. But to say that there's nothing dangerous about a sudden change in surface conditions, I don't know what scientific evidence or what basis there is for saying that this is just plain not a dangerous, that as a matter of law, this cannot be said to be a dangerous condition. Again, Your Honor, you can build a perfectly good roadway right to the edge of a cliff, and someone could be driving on it at night and go right off the cliff. If the builder of the roadway cannot come to court and say, there was nothing wrong with the roadway we built, it must be looked at in conjunction with what effect it has on the overall roadway at that area. Now, the defendant, really their whole brief is about that they don't have a duty to extend, I quote them, to extend this roadway throughout their entire jurisdiction. Well, why would the plaintiff care about such a thing? We don't care if the roadway was extended  We don't care about that. What we care about is the area of transition from blacktop to gravel. This is an area measured in yards, not in miles. So, in this business about we can't afford to do this, you can't tell us that we need to extend the roadway, we don't care about it. If they don't pave the entire road, is there always going to be some transition? There is, but there's ways of handling that transition to ameliorate or abate the danger. What would those be? Lowering the speed limit from 55 miles an hour, posting a sign, perhaps some writing in the area. So, it's negligence not to lower a speed limit? Is there any case that so holds or would we be the first in western jurisprudence? No, your honor. Let me just quote from you from Herman B. Will Township Um Your honor, rather than look for the quote, let me The theory is this, your honor. Tell me again how not lowering a speed limit constitutes negligence. It doesn't. I do not say that it constitutes that. I say that the condition they created constitutes negligence. They could have abated that danger and there wouldn't be a problem that could have by putting up either a warning sign or lowering the symbol that would offset the affirmative act of negligence that they did. But since they did not offset it, I'm not saying they have to do it. So, it's negligence to have a transition between concrete and gravel. Yes. The court saw thought so in Herman B. Will Are they right? We don't have to buy that. We've got experts, Judge. I wish you could hear them. What makes that sensible? Well, your honor, I would point to the fact that there are often road signs warning of a sudden change in service conditions, which just goes to show that reasonable people view this as a hazard. And I don't see... keeping that in mind... So, it's negligence to go from gravel to... from a paved road to gravel and you can ameliorate it by trying to take steps to lower the speed limit or put up signs? Or lighting? Or perhaps... What time of day did this accident occur? Your honor, I don't know. So... You didn't plead it? We did. We did not plead the nighttime visit. Well, if it were noon then lighting probably wouldn't do much to ameliorate the accident. No, lighting wouldn't. But lighting in that condition... No, lighting wouldn't. But, you know, Judge, we're talking about proximate cause here. And proximate cause is in the province of the jury to decide based on listening to either their own testimony of expert witnesses. Many experts testified in Herman v. Will. The court talks about their testimony. Now, maybe if the court never heard their testimony, they might think, well, what's so dangerous about it? We're allowed to proceed... We're allowed to have the people of the state of Illinois sitting in a jury to decide such a matter and not the court. No disrespect to the court, but... Another thing, your honor, we were dismissed on immunity on a Section 2619 motion. A Section 2619 motion admits arguendo, a Section 2619 motion admits the legal sufficiency of the complaint. What that means is a 2619 motion says, yes, you've stated a valid cause of action. We take no issue with that. But, there's something over here in affirmative defense that vitiates your cause of action, and that's the Tort Immunity Act. But when we look at the Tort Immunity Act, and we see that there's an exception to immunity where you affirmatively create a dangerous condition, they answer, ah, that's not a dangerous condition. Well, now, wait a minute. You're no longer admitting the legal sufficiency of the complaint. You cannot, and I think this is... So then, no 2619 motion could ever lie asserting tort immunity. Is that right? Not where there is a not where there is an assertion in the complaint, an affirmative creation of a dangerous condition, which is under 103. The Court specifically says, then the county will be liable. If they affirmatively create it, they're liable. Now, what they should have said here is, well, look, you don't allege a dangerous condition. There's no... We're not going to... 2619 obviously can't lie in the face of an affirmative allegation of negligence, but a 2615 motion, which basically says, so what? A 2615 motion could lie, but then again, we run into some problems. First of all, how can the Court look at this disparate change in road conditions and say, that, as a matter of law, cannot be negligence? I don't need to hear any more that cannot be negligence. And second... So if you look at the... Would you agree at least part of the Will County case related to four inches of loose gravel is different than well-compacted gravel? Yes. Not that we have well-compacted gravel here, but yes, Your Honor. Is there anything in the complaint that complains about whether the gravel is compacted? Yes. We specifically say the gravel is not properly compacted. I've relied on just four of our allegations of negligence to hang our head on all the willful and wanton stuff. We're not proceeding on that. We don't need that. So, Your Honor, the other problem with... Look, I want to know if this case is going to get dismissed as the affirmative... On 2619? Because on 2619, we've got to admit there's a dangerous condition and then see if immunity still holds. Well, you can't. Now, how about 2650? You just haven't fled a dangerous condition, which is also what the trial court said. You know, there's nothing here dangerous. I don't buy the Tocqueville circumstances argument. It doesn't look dangerous to me. I don't see how the court, the trial court, can make that decision. I've said that. But secondly, this is a wrongful death case. The plaintiff should be allowed to amend their complaint. If there's a problem, oh, you have it alleged. Unless there's no way that you can possibly allege a disparate surface condition could result in being considered dangerous, which we know from Herman we will. It can be. Unless you allege it, then we should have been allowed to amend our complaint. Now, counsel said, my opponents say that, well, you waived that. Well, we didn't waive it, Judge. There was a dismissal with prejudice pursuant to 2619, which admits the legal sufficiency of the complaint. So you could amend the complaint all day long. It doesn't affect the 2619 dismissal. Secondly, this was a final judgment of the circuit court. There was no opportunity to ask for leave to amend at that point unless we file a motion to amend. But that's not required. One might say, well, we could have attached a proposed amended complaint to our response brief, but that's a sign of weakness. And that's not required. I've never seen that, Judge. A person doesn't say, well, I think we state a cause of action, but here's our amended complaint. If you think we didn't, you wait until that happens. The dismissal is entered without prejudice, typically under 2619, and you're allowed to replete. So I would ask, Your Honor, that any affirmance of the lower court's opinion based on pleading grounds alone that we haven't pledged something properly is improper. It's only the dismissal with prejudice under 2619 that could support dismissal. And I ask, Your Honor, to look at 3-103, which says that if you actually undertake to carry out something, and it results in a dangerous condition, then you are liable. The Tort Immunity Act is simply not as strong as our opponents would have it be made of. You cannot put a rock in the middle of the road and then claim, I have no duty to warn, I have no duty to put up a sign or to put up a barrier so you won't hit them, because clearly Section 3-104 very strongly immunizes the defendants for any liability from failure to put up a sign or a barrier. We admit that fully. But the negligence does not lie in failure to put up a sign. And in one of the cases here, I'll certainly have it ready on pre-buttol, Judge. The court says the negligence, sure, you could have put up a sign, but that's not where the negligence lies. The negligence lies in the original act of making the dangerous condition. Signs to abate the dangerous condition, that's secondary. It's not the source of liability. Again, I would ask, who is to say that this is not a dangerous condition? None of us have seen it ourselves. We haven't heard the testimony of competing expert witnesses. We have to pass on whether or not any set of facts could be pled. Is the court willing to say that no set of facts could be pled? Herman never should have been allowed to go to trial. No set of facts could be pled. Because whether or not you create, whether or not you're the one who laid the gravel or the blacktop, Herman stands for the proposition that it can be dangerous. The result, the resulting disparate surface conditions can be considered a danger. So why did we not have our day in court? I mean, clearly, with all due respect to the trial court, to say that Section 102 and 103 completely immunized the defendant from all the alleged acts without recognizing, without mentioning the glaring exception, which is the last sentence of Section 1-3-103. And I'd like to read it. The local public entity is liable. Is liable, however, if after the execution of such a plan or design, it appears from its use that it has created a dangerous condition. Well, that's what we say is going on in our case. They actually did something. We say it's dangerous. Trial court says it's not dangerous based on what? How can this court affirm? Even if we had advanced engineering degrees and whatnot, it's not the role of the court at this time to pass on those facts. Unless it can say with certitude that there is no way this can ever be dangerous. And you can't say that. Okay? We're entitled to our day in court. Proximate cause is a question for the jury. Your Honor, also I want to say that as far as I say it appears from its use that it has created a dangerous condition, that implies some sort of notice. If that's above the rule, I'd like to dismiss immediately. When you create the dangerous condition, case after case, when you create the dangerous condition, you are ipso facto on notice of that condition. Period. No one's got to come and tell you that this is hurting people. You did it. You created it. You're on notice of it. So I really don't see where my opponents is going other than to say we have no duty, which is all they say. We have no duty to extend our roadway for the other mile. Not asking anybody. We mentioned it in the complaint to get some idea of how this happened. But we're not saying you need to go build another mile of road. We're saying, hey, you did something. Before there was no danger. You came in. You did something. When you left, now there's a danger. And it killed my client. And so, Judge, we want to know, why can't we go to trial on this? Tort Immunity Act seems to be in our favor. I can't wait to hear the other side. In the meantime, if there's any questions, I can Thank you. Are you both, who's arguing? We're both going to argue for the split of 20 minutes. Good morning, your honors. May it please the court, counsel. My name is Mike Persani and I represent Livingston County in this case. As we indicated, your honor, I will take up half the defense time for oral argument. Your honors, the issues in this case are whether, as it relates to my client, whether the county was immune from any liability for injuries, based upon its very limited involvement in approving engineering plans for the paid portion of this road five to six years before this unfortunate, fatal accident occurred. The trial court properly dismissed the case on immunity grounds, and the record more than amply supports dismissal based upon the county's argument that it held no duty of care under these circumstances. I ask that you confirm the trial court's decision in this case. Your honor, plaintiff makes an argument under sections 3.102 and 3.103 of the Online Tort Immunity Act, and those sections, as counsel pointed out, create a duty of care to maintain public property in a reasonably safe condition, and also that once a public improvement, they have to do it in a non-negligent fashion. I think what I'd like to focus your honor's attention on is the actual allegations of the complaint, because they differ drastically than the arguments that are being made on appeal by the plaintiff here. The plaintiff alleged in paragraph 8 of the complaint that basically three allegations. One is that the defendants did not extend the road west of the intersection, extend the paid portion of the road west of the intersection. Number two, that the defendants failed to compact the gravel continually over time, sort of an annual maintenance type of allegation. And number three, that the defendants failed to warn of the change in the road surfaces. Those are the allegations made by the plaintiff in his complaint. Now, the county it's undisputed, and the plaintiff's attorney conceded this in the trial court, the county did not own this road. It was not the county's road. It was not the county's intersection. Now, the county didn't control any portion of the road. That was conceded here. The county did not undergo any construction itself. The county was not responsible for the construction. All of those activities and that ownership attribute are on the part of the township here and not the county. So the county had very limited involvement, and we submitted the affidavit of David Winters, the county repotting, concedes the facts in that affidavit, that the county's involvement here was limited to preparing engineering plans. The county is basically the administrator of the motor fuel tax program for the township. And what the county does is prepare the engineering plans for the paved portion of the road, stamp the plans, and then the construction is actually performed by the township itself or a contractor for the township. Under Section 3-103 of the Illinois Point Toward Immunity Act, the county very clearly, unequivocally has immunity for those actions. That section of the act says that there is no liability on the part of a public entity for adopting a plan or design of construction. And the plaintiff has conceded here that that construction was done non-negatively. So even if you take it a step further, there's not even any undertaking that was done in a negligent fashion. But aside from that, the county's sole involvement was the approval of the engineering plans, and Section 3-103 clearly provides immunity to the county for that activity. Now the plaintiff seizes upon the exception stated in 3-103, and that exception states that after execution of the plan or design, if it's apparent from its use that an unsafe condition has been created, well that does negate the immunity provided in the first part of that section. The predicate for liability under that exception is notice. If you look at the Illinois Supreme Court's decision in West v. Kirkham, and here's where counsel is absolutely flatly wrong when he says there's not a notice element to Section 3-103, because the Illinois Supreme Court in West v. Kirkham very clearly said that both 3-102 and 3-103, which have to be read in tandem, limit immunity for the approval of a plan or design in situations where the public entity is without notice that it created an unsafe condition. So very clearly the Illinois Supreme Court has said that there is a notice element to the exception to immunity under Section 3-103. The cases cited by the plaintiff here, the Herman case, the Jorgensen case, the Huggins case cited in the brief, all are easily distinguishable. As your Honor mentioned, Herman involved a township highway commissioner who widened a road, laid down 10 inches of gravel, went out to inspect the construction, and admitted that there was loose gravel, 4 inches of loose gravel on the road. Four days later, someone on a moped crashed and was injured, and the court in that case held that there was liability because there was a jury verdict in that case that there was liability because there was a breach of duty based upon negligent construction, the failure to compact the gravel. The plaintiff has conceded here that the construction here was done in a non-negligent fashion. So Herman is easily distinguishable and not applicable to, at least for sure, the counties involved in this case. The Jorgensen case, if you look at Jorgensen and read the facts, the city in Jorgensen took precautions when it built a temporary airport terminal, took precautions to protect, or try to protect pedestrians in a loading area, a bus loading area. But they did it in a non-negligent fashion. And the facts of that case are that they put up barricades on one side of the road, but didn't put up barricades on the other side of the road. That the city had passed an ordinance requiring that there be an attendant out at the terminal to assist passengers getting on the bus so they wouldn't get hit by vehicular traffic. And the facts in that case were that there were no attendants out there and there was no supervision of that. So very clearly the city took precautions. They knew that there was a problem out there when they created this temporary terminal. They knew there was a problem. They tried to take precautions. They did it in a negligent fashion. And that's why there's no immunity in Jorgensen and why there was liability. And the same thing with the Huggins case. That involved widening of a road, a five to six foot slope from the road to the sidewalk with gravel on it, complaints to the mayor that people couldn't come up and down that slope to get to a business off the sidewalk. Very clearly another element of notice on the part of the public entity. Here, no allegation in the complaint that would establish that the county in approving these plans five to six years earlier was on notice that it had created some sort of unsafe condition. And in fact just the mere passage of time between the county's involvement in this unfortunate accident belies any notion that there would be any type of notice on behalf of the county or notice to the county. And if you just look at the plain language of section 13-103, it very clearly says that it must be apparent from its use. Well, this was not the county's road. And so if it was apparent from its use, it's going to be apparent to the township who was the one in control of the road and the one who was maintaining the road. Now, another element here that has to be discussed is whether there was an unsafe condition alleged in the complaint. And very clearly there were not even close to being sufficient facts alleged in the complaint that there was an unsafe condition. Now, the motion to dismiss under section 2615 in the trial court concludes that the complaint is insufficient. Isn't the plaintiff correct that he should be given an opportunity to amend? The plaintiff was given an opportunity. The plaintiff could have amended. The plaintiff did not take the opportunity to amend. I thought this was a dismissal with prejudice on your motion to dismiss. It was actually a combined motion to dismiss. It was brought under 2619.1, so there was an alternative motion. One was under 2615, lack of duty, and another portion under the Court Immunity Act. So if the plaintiff at any time felt that What did the trial court say in its order? My reading of the trial court's order is that it granted the motion to dismiss on immunity grounds. So that's what's before us now? Well, but you can affirm on any grounds at all. How can we affirm on the grounds that the plaintiff failed to state a cause of action when the court dismissed with prejudice and the plaintiff wasn't... If we were a bunch of former trial judges here in counsel, say if you're going to dismiss it on a 2615 grounds, you turn to the plaintiff and say, the defendant is correct. You haven't stated a cause of action. I'm going to give you three weeks to file an amended complaint, if you wish, to see if you can do that. And then he can say, no, I want to stand on my complaint. Now we're done. Or he can say, I want to amend it. Or we don't have that here. I still believe that the plaintiff could take the opportunity because we did bring a 2615 motion as well. I mean, there is the possibility that the fellow court could reject the immunity defense and then you're left with deciding whether or not a cause of action wasn't yet stated. So I think the plaintiff did have the opportunity and waived that opportunity to amend his complaint. Your Honor, thank you very much. May it please the Court. Good morning, Your Honors. My name is Troy Lundquist. With me at counsel table is my partner, Anastasia Hess, and we represent Round Grove Township. And I appreciate the Court allowing us half of the time this morning to speak to the issues before you. When you review the case in its totality, as the plaintiff says, and as plaintiffs have asked numerous times here today and in the Court below, you'll see that they were, contrary to what's been suggested here today, given their day in court. They were allowed all opportunities to address the allegations in the complaint and, as Your Honor touched on just a second ago, amend their complaint if they wished. I believe both defendants in this case filed combined motions under 619.1, which is to strike conclusions or unsupported statements of law, as well as a 619 motion. And when those are presented to the Court in conjunction as they were in this case, I believe Judge Bachnick approached this correctly by examining the case first, the complaint first, and determining what conclusions of law here do we have, what facts do we have, striking unsupported conclusions of basically what is left of the complaint. If there's anything here, does it state an action that would not be immunized completely under the Tort Immunity Act? Does the complaint state who did the road improvement? The complaint, as it's written, suggests that all defendants took part in the road improvement. The materials that were submitted by the county, the deposition of David Winters confirmed that they simply approved the plans, we as a law firm hired it out to be done. So that's not in dispute, although it's much broader in the complaint. The facts which were presented by the county's engineer focused that. I don't think that matters at the end of the day. There's no dispute that we had the work done. The complaint suggests, and I quote, that a long time prior to January 19, 2007, this work was done. We have to look at exactly what was done and then exactly what the plaintiff contends was dangerous about it. And that's exactly what the judge in the court below did. The plaintiffs have alleged that we improved the road to the east of the intersection. We admit that. That's not a question. I have no quarrel with the standard that all well-pled facts are deemed admitted for purposes of this. Here, the plaintiff was asked repeatedly in the court below many of the same questions that they've been asked today. Is it correct to say that the only improvement is on the east side of the roadway? Yes. They've admitted that the only improvement, the only work that was done is on the east side of the roadway. So the gravel road where the accident occurred, nothing was done. Correct. That was pre-existing. Correct. For many, many years. And the only thing that changed was the west side of the roadway was paved. Exactly. Up to the intersection. Exactly. Okay, go ahead. That factual presentation, I would submit to the court as we did below, if that presents a dangerous condition in and of itself, we are surrounded by thousands of dangerous conditions in our state and neighboring states today because road surfaces quite often change at intersections. What the plaintiffs are trying to do is suggest to this court, as they did below, that other things should have been done. Let me point out, there has been no criticism of the roadway to the west. That was a question that was asked this morning. They admitted the unimproved roadway to the west itself was not dangerous. That was admitted below. It's been conceded here again today. That gravel roadway stands as it did on the day of the accident as it had for decades. Loose gravel, exactly like it had always been. If we were to say that the improvement of a road by paving it or making it tar and chip on one half of an intersection without going further, in and of itself creates a dangerous condition, our hands as governmental wouldn't be able to improve any roads at all unless we're prepared to improve the entire road, which we obviously cannot always do. What about counsel's argument that, well, you can put in lights, you can lower the speed limit, you can put up warning signs, etc.? I believe the plaintiff in response to those questions fully understands that under 3105 of the Tort Immunity Act, there's no duty to upgrade or install things. Under 3104 of the Tort Immunity Act in West Virginia versus Kirkham, there's no duty to install barricades or signs or speed restriction signs or speed lowering signs or anything of the sort. There's complete immunity for every one of the items that they've touched on here today, and they admit as much. But then having admitted that it's fully immunized, they come back and suggest, but if you look at the totality of the circumstances, this should be actionable. They have not alleged that there was anything done at all, let alone done inappropriately, on the gravel side, because there was no construction there. When did the pavement on the west portion of the road occur? From the complaint itself, it suggests nothing other than a very long time before. We know from the supplemental evidence from Mr. Winters that it was done, I believe, four to five years before when the plans were approved. This case is not unlike a case that two esteemed members of this panel heard here in this court in McKinnell versus Clayton Township. In that case, there was argument that the sudden abrupt change of the roadway where the railroad tracks had been removed was actionable without signage or further warning. That was refused. That was found to be completely covered by the Tortimony Act. This court in its decision cited with favor the Havens versus Harris Township case from the third district, which talks in terms of discretionary immunity. Governmental entities have to be allowed discretion in what they choose to upgrade, and I will grant you that if they choose to upgrade something, they have to do it reasonably. But there's no pleading and there's concessions here in this case that everything that was done was done appropriately. They take issue with what was done appropriately. We're back where we started, Your Honor, with your suggestion of signs, lighting, speed restrictions, all of which the governmental entities enjoy complete immunity for. The Herman case, which everyone has talked about, and I think Mr. Bersani covered that very well by showing how that really is different than our situation here. The distinction in the cases that have been cited by the claims and relied upon by them is the improvement caused the injury. In Herman, there had been freshly laid gravel that was not compacted. The moped came along and hit four inches of loose gravel that had been freshly laid as part of the improvement. That's what caused the injury. That's not what we have here. The Jorgensen case is very similar. The improvement itself caused the injury. Here, we have nothing more than a change in roadway surface as you cross through the intersection like we do in thousands and thousands of other rural intersections throughout our state. As I suggested earlier, if that is found to be negligent in and of itself, which is all that has been pled here when you remove the conclusions, then we as governmental entities are in trouble because it brings into play arguments to put up signage, to put up lightings out in the middle of nowhere, all of which we enjoy complete immunity for. When everything is examined, you'll see that the plaintiffs did in fact have their day in court. There was no request to amend the complaint even if there was a dismissal with prejudice. They still could have filed a motion asking leave to amend or proposing a new pleading. They've waived that. There was no such request. And if you look at the case that I in-depth went through with Mr. Kerdick in the court below, you'll see that she gave him an opportunity to tell me what you're complaining of here. Tell me what was done wrong. There was nothing other than what's before the court. The issue of an amendment is a red herring here. It's been waived and there's nothing to ask other than what is before you. Your Honors, we would ask that the court's dismissal be affirmed. I thank you for your presentation and time with us this morning. I'd be happy to answer any questions. Thank you, Your Honors. Thank you, Your Honor. I'd like to address very quickly West v. Kirkland, which is heavily relied upon by my learned brother. In West, Your Honor, the local governmental entity installed a left turn arrow for one direction of traffic but didn't install one for the other direction. A person who went through the green light without the arrow from the other direction got hit by a left turner and said, hey, you installed one for that side. Why didn't you install one for our side? That's not our case. That's West and all the other cases they cite. And if you look at the Immunity Act itself, it deals with a failure to act. They don't want people coming into court saying the county should have done this, they should have spent this money, they should have done that. They have immunity for almost all of that type stuff. But when they do act, they're like anybody else. They have to act in a non-negative way. The accident occurred on the east portion of the road beyond the intersection? It occurred on the gravel portion of the road. That was the east portion? Yes, Your Honor. Immediately after. And the west portion had been paved a few years earlier? Yes, Your Honor. I don't know how much longer earlier. I have no reason to doubt. Had the paving not occurred on the west side four years earlier, but everything else was the same in this case, would you be here? No. Why not? Because there wouldn't be any dangerous condition on that roadway. So nothing was dangerous about the gravel roadway except that you came off paved roadway? Right, which is just what counsel just seemed to say. I just heard him say, we went into four inches of gravel, that's bad. Well, that was in the Will County case. Right, but it's still going from paved to gravel is what caused the accident. And they attempt to distinguish it by saying, well, they put the gravel there. We didn't put the gravel there. It sounds like the fact that you had four inches of non-compacted gravel was the problem in the Will County case. Well, it's not necessarily four inches, it's the judge in that case. I'm sorry, Your Honor, I do not mean to talk. Go ahead. But I think it's important to note that the judge in that case, that the tour guy on the moped couldn't tell that it was changing I quoted in my brief, he could not tell that the road was changing from paved surface to gravel until it was too late to slow down. But there was nothing the matter with the gravel road in this case. Well, if it, yes there was. Judge, I really find this to be a logical some sort of to say that they didn't do anything wrong. Again, Judge, they could lay a road to a cliff, okay, and everything beyond the cliff was always there before, which is nothing. Well, let's suppose they make a roadway, but they make it six feet two feet lower than the, they come in, we're going to take a one mile section of roadway, we're going to repave it. Only it's two feet lower than the sections that they didn't touch. And someone drives down the road, they go off the two feet and their car crashes and they injure themselves. They would come in court and say, hey, nothing wrong with this road, it's beautiful. Sure, it's two feet lower, but now you're looking at the other. Don't look at that road over there. Don't look at that road over there. Just look at what we did. But as Mr. Perdick argued in the trial court, it is the hallmark of our jurisprudence to look at the totality of the circumstances to determine whether the burden of making, of correcting it outweighs the danger that is inherent. And again, I don't see why my analogy, they build a road that's two feet lower or two feet higher than the other car, but they can't just come in and change the overall experience of the driver is what they've done. They change, before a driver's on gravel, he stays on gravel. He hasn't. Now, he's on paved road and all of a sudden, whether it's four inches of loose gravel or not, in Will Township, it was the change. Both of them were equally liable? Your Honor, we're aware and we take whether we asserted it or not. Fair is fair and we're not going to sit here and stand on any pleading rules. We understand that the county did not engage in their argument with regard to them on appeal now is a little bit more nuanced. They did approve. They admit that they approved, which normally is a discretionary act, okay, and immune from liability as such. But the deposition of Mr. Winters reveals that it was an automatic approval. No matter what the thing looked like, he was going to stamp it, which makes it ministerial as to his part. I'll let your honors, we don't have a lot about that in the brief, I'll let your honors accept that, but we're really focusing on the township much more today than we are the county. And this idea that they didn't do anything wrong because their roads were, and one point if I may, Judge, we did request in the reply brief leave to amend. That's in the reply brief below. The response brief to the motion to dismiss. We said, if your honor doesn't buy this, please allow us leave to amend. So we talk about requests, but of course we didn't attach one. Thank you, your honors, for listening. Thank you, counsel. We'll take this matter under advisory.